IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| HEATHER MARIE EDICK, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No.  7:14-CV-120-O-BL |
| | § | |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | Referred to U.S. Magistrate Judge |

## REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), Plaintiff Heather Marie Edick seeks judicial review of the decision of the Commissioner of Social Security (Commissioner), who denied her application for a period of disability (POD) and disability insurance benefits (DIB) under Title II of the Social Security Act (Act). The United States District Judge reassigned the case to this Court pursuant to 28 U.S.C. § 636(c). The parties have not consented to proceed before a United States Magistrate Judge. After considering all the pleadings, briefs, and administrative record, this Court recommends the decision of the Commissioner be affirmed and this case be dismissed.

## I. STATEMENT OF THE CASE

Plaintiff filed her applications for a POD and DIB on June 7, 2011, alleging disability beginning on June 2, 2011. Her applications were denied initially October 7, 2011, and again on reconsideration May 11, 2012. Plaintiff requested a hearing, which was held before an Administrative Law Judge (ALJ) on February 11, 2013. The ALJ issued his decision on May 24, 2013, finding Plaintiff not disabled.

More specifically, the ALJ found: Plaintiff met the last insured status requirements through March 30, 2015. Tr. 295. Plaintiff had not engaged in substantial gainful activity since her alleged

onset date; the claimant had the following "severe" physical and mental impairments—diabetes mellitus, chronic urticaria, obesity, hyperlipidemia, hyperthyroidism, bipolar disorder, mood disorder (NOS)[1], anxiety disorder (NOS), and personality disorder with borderline features. Tr. 295. But Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (hereinafter Appendix 1). Tr. 296. The ALJ found Plaintiff had

> the residual functional capacity to perform less than the full range of "light work" as defined in 20 CFR 404.1567(b) in that the claimant: must avoid concentrated exposure to temperature extremes, 80 degrees or more and 60 degrees or less; must avoid concentrated exposure to irritants, such as dusts, flumes (sic), smoke, gases, and poor ventilation; must avoid concentrated exposure to workplace hazards, such as dangerous moving machinery and unprotected heights; understand, remember, and carry out simple instructions; make only simple work related decisions; deal with only occasional changes in work processes and environment; have no contact with the general public; and have no more than incidental, superficial work-related type contact with the co-workers and supervisors, i.e., brief, cursory, succinct communication relevant to the task being performed.

Tr. 298. Plaintiff could not perform any of her past relevant work, but considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. Tr. 302. Accordingly, the ALJ found Plaintiff not disabled under the Act. Tr. 303.

Plaintiff appealed the ALJ's decision to the Appeals Council, which denied review on August 20, 2014. Tr. 1–7. Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *See Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) (stating Commissioner's final decision "includes the Appeals Council's denial of [a claimant's] request for review").

## II. FACTUAL BACKGROUND

According to her pleadings and testimony at the administrative hearing, Plaintiff was thirty

---

[1] NOS is shorthand for "not otherwise specified." *See* NEIL M. DAVIS, MEDICAL ABBREVIATIONS: 14,000 CONVENIENCES AT THE EXPENSE OF COMMUNICATIONS AND SAFETY 201 (9th ed. 1999).

2

four years old at the time of her hearing. She graduated high school and attended some college courses, but did not graduate with a college degree or certificate. She has worked in several payroll and accounting type jobs over the years as an accounting clerk, payroll clerk, and payroll travel clerk. She complains of a variety of health problems whose treatments allegedly conflict with other treatments or exacerbate other problems. For example, she alleges she has gastroparesis, treatment for which is a high fiber diet. She also alleges she has colitis, treatment for which is a low fiber diet. In all, Plaintiff complains of diabetes, gastroparesis, colitis, and diabetic diarrhea, but the primary impairment she focuses on in this appeal urticaria, commonly known as hives. Plaintiff claims her hives have "persisted from November 2009 to four days before the hearing." Pl.'s Br. 7. She claims her impairments render her disabled under the Act.

### III. STANDARD OF REVIEW

A person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382c(a)(3)(A), 423(d)(1)(A) (2012). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1572(a)-(b) (2013).

To evaluate a disability claim, the Commissioner follows "a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in [A]ppendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of showing she is disabled through the first four

steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448. Before proceeding to steps 4 and 5, the Commissioner must assess a claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). RFC is defined as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

This Court's review of the Commissioner's decision to deny disability benefits is limited to an inquiry into whether substantial evidence supports the Commissioner's findings, and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson*, 309 F.3d at 272; *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). If substantial evidence supports the Commissioner's findings, then the findings are conclusive and the Court must affirm the Commissioner's decision. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). The Court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the Court believes that the evidence weighs against the Commissioner's decision. *Masterson*, 309 F.3d at 272. Moreover, "'[c]onflicts in the evidence are for the Commissioner and not the courts to resolve.'" *Id.* (quoting *Newton*, 209 F.3d at 452).

## IV. DISCUSSION

Plaintiff brings one issue before the Court. She claims the ALJ erred when he found Plaintiff's hives did not meet or medically equal an impairment listed in Appendix 1.

### A. Meets or Medically Equals A Listing

At step three, the ALJ asks whether a claimant's impairment meets or medically equals an

impairment listed in Appendix 1. *See, e.g.*, *Audler*, 501 F.3d at 448. The burden is on the claimant to prove with medical evidence that she satisfies all the criteria in the listing. *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990) (*per curiam*). If a claimant cannot show she "meets" all the criteria in the listing, she may nonetheless seek to prove she "medically equals" or is equivalent to a listing, which would thereby render her disabled. *See Sullivan v. Zebley*, 493 U.S. 521, 531 (1993); 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). "For a claimant to qualify for benefits by showing that [her] unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, [s]he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Zebley*, 493 U.S. at 531 (emphasis in original).

Section 8.05 in Appendix 1 is the listing for Dermatitis, which the ALJ found Plaintiff's impairments did not meet or medically equal. Tr. 296. It reads: "Dermatitis (for example, psoriasis, dyshidrosis, atopic dermatitis, exfoliative dermatitis, allergic contact dermatitis), with extensive skin lesions that persist for at least 3 months despite continuing treatment as prescribed." Appendix 1, § 8.05. The introductory materials also specify how the Commissioner proceeds when a claimant's impairments do not exactly meet a listing.

> 1. These listings are only examples of common skin disorders that we consider severe enough to prevent you from engaging in any gainful activity. For most of these listings, if you do not have continuing treatment as prescribed, if your treatment has not lasted for at least 3 months, or if you do not have extensive skin lesions that have persisted for at least 3 months, your impairment cannot meet the requirements of these skin disorder listings. . . .
> 2. If you have not received ongoing treatment or do not have an ongoing relationship with the medical community despite the existence of a severe impairment(s), or if your skin lesions have not persisted for at least 3 months but you are undergoing continuing treatment as prescribed, you may still have an impairment(s) that meets a listing in another body system or that medically equals a listing.

Appendix 1, § 8.00(H). Additionally, the introductory materials spell out the type of documentation the Commissioner requires in making its assessment of a claimant's skin disorder.

>When we evaluate the existence and severity of your skin disorder, we generally need information about the onset, duration, frequency of flare-ups, and prognosis of your skin disorder; the location, size, and appearance of lesions; and, when applicable, history of exposure to toxins, allergens, or irritants, familial incidence, seasonal variation, stress factors, and your ability to function outside of a highly protective environment. To confirm the diagnosis, we may need laboratory findings (for example, results of a biopsy obtained independently of Social Security disability evaluation or blood tests) or evidence from other medically acceptable methods consistent with the prevailing state of medical knowledge and clinical practice.

Appendix 1, § 8.00(B).

As previously noted, the ALJ found Plaintiff's "chronic [hives] [do] not meet the severity requirements of Section 8.05 . . . due to the absence of evidence of extensive skin lesions that persist for at least 3 months despite continuing treatment as prescribed." Tr. 296. Plaintiff, therefore, seeks to establish her hives "medically equaled" Section 8.05. Plaintiff claims her first treatment records for hives were from May 24, 2010, when she was diagnosed with "acute urticaria." Pl.'s Br. 3; Tr. 612. She claims she had reoccurrences of hives in June, July, August, and September 2010. Pl.'s Br. 3. She also cites medical records dated April and November 2011, and August 2012, which she claims establish she had hives at those times as well. Pl.'s Br. 4–6. In all, Plaintiff claims this evidence establishes she suffered from hives during the period from November 2009 to the hearing date. Pl.'s Br. 7.

Defendant claims that despite all the evidence Plaintiff cites, Plaintiff should have cited more. Defendant claims Plaintiff selectively cited to the medical record, and that a complete look at the record will reveal that the ALJ was correct in finding there was no evidence of skin lesions that persisted for at least three months despite continuing treatment. Def.'s Br. 5.

Noting that Plaintiff alleged disability beginning June 2, 2011, Defendant begins its discussion of the medical records just prior thereto, with an examination performed on April 14, 2011. Def.'s Br. 5; Tr. 803. Plaintiff complained to her physician that she had been suffering from hives almost daily for fourteen months. Tr. 803. The physician noted a relationship between hives

and food triggers, such as "fish, shellfish, contrast dye, and the additive [brominated] vegetable oil." Tr. 803. The notes reflect these all "cause hives within 30 minutes of ingesting." Tr. 803.

Defendant states that approximately one month after Plaintiff's alleged onset date, Plaintiff's hives had improved, although not been eradicated. Def.'s Br. 6; Tr. 860 (negative finding for skin rash or lesion on August 8, 2011), 863–64 (noting Plaintiff's hives "improved since last time apparently with [certain medication] regimen. Better today, but not resolved."). Later in August 2011, Plaintiff denied having "any physical limitations due to medical problems." Tr. 811. In early November 2011, Plaintiff reported her hives "have just been really bad," and doctors adjusted her medications. Tr. 996. At the end of November 2011, Plaintiff told doctors her hives had been "under control for [the] last couple of weeks. 2 weeks." Tr. 997. In early December 2011, Plaintiff told doctors she thought her deodorant may be causing hives. Tr. 997. By February 2012, Plaintiff reported she would have occasional breakouts of hives that would last two days, but her situation was "much improved." Tr. 995. In early August 2012, Plaintiff sought treatment for her hives. Tr. 1093. She told the doctor the hives had appeared one morning, disappeared after a day, and subsequently reappeared. Tr. 1093. The doctor found Plaintiff was in no acute distress and noted that Plaintiff had taken Prednisone, "which seems to help with hives . . . ." Tr. 1093. It does not appear the doctor changed Plaintiff's hives medications at that point. By late August 2012, Plaintiff was not in acute distress, displayed no hives-related lesions, and told doctors in the last two weeks she had not experienced hives-related lesions. Tr. 1149. The doctor noted Plaintiff had "had a number of different laboratory tests for [hives] and angioedema, which have essentially been unremarkable other than a mildly increased thyroperoxidase antibody." Tr. 1149. In a September 2012 physical exam, a doctor found no hives or rash present. Tr. 1129. The next month, October 2012, Plaintiff did not report hives, and the doctor found no hives or rash present. Tr. 1111. Later in October 2012, Plaintiff did not complain of hives at a medical examination and the

doctor did not report any. Tr. 1108–10.

Defendant notes that State agency consulting physicians reviewed Plaintiff's medical record in October 2011 and May 2012. Def.'s Br. 7. They found that while Plaintiff had a skin condition, the record revealed it had "not involved large areas of the body or critical areas such as . . . hands or feed to such an extent that [Plaintiff] cannot perform work activities. The evidence does not show any other impairment that would significantly restrict [Plaintiff] from performing work related functions." Tr. 387. They also noted that Plaintiff's hives were "a self-limiting condition or is not expected to continue. This is controlled on antihistamine . . . for acute and hydrosyzine [for] episodic flares." Tr. 367. Finally, Defendant notes that no treating or examining source at any point in Plaintiff's medical history opined that Plaintiff's hives were a disabling limitation. Def.'s Br. 7.

The ALJ stated he considered all the above-mentioned evidence in conducting his Appendix 1 analysis. Tr. 296. He found, as the Defendant points out before this Court, there does not appear to be a three-month period during which Plaintiff's hives persisted despite continuing treatment as prescribed. Perhaps tellingly, Plaintiff does not annunciate any precise three-month period. Instead, she broadly claims the ALJ failed to consider the whole record. The Court notes that many of Plaintiff's references to medical records which she claims are diagnoses or findings of hives are in fact physicians' recitations of Plaintiff's subjective complaints.

For example, Plaintiff references a visit she had with Joseph Marino, M.D., on September 9, 2010. Tr. 650. While Dr. Marino does list in his "impression" section that Plaintiff suffers from chronic hives, Dr. Marino concedes that "[n]o allergy testing was done." Tr. 651. Plaintiff's reference to suffering from hives since November 2009 is merely her recitation to Dr. Marino, not his opinion after a review of the medical files or performance of any laboratory tests. Of course, Plaintiff's subjective complaints are to be taken into consideration; still, Plaintiff fails to point to

confirmation in the form of laboratory findings or tests, or objective evidence gathered by medically acceptable clinical techniques. *See generally* Appendix 1, § 8.00(B). Furthermore, as the Court of Appeals for the Fifth Circuit has stated, "[t]he mere presence of some impairment is not disabling per se. Plaintiff must show that she was so functionally impaired by her [hives] that she was precluded from engaging in any substantial gainful activity." *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983).

As previously stated, Plaintiff is not claiming she meets Section 8.05. In terms of attempting to show her hives are equivalent to Section 8.05, the Court finds Plaintiff fails to present "medical findings equal in severity to *all* the criteria" in Section 8.05. *Zebley*, 493 U.S. at 531 (emphasis in original). Accordingly, it is apparent Plaintiff has not carried her burden of showing she was disabled at step three. *Audler*, 501 F.3d at 448. Considering all the evidence in the record, the Court finds that substantial evidence supports the ALJ's decision that Plaintiff's hives did not meet or medically equal Section 8.05.

## V. CONCLUSION

In sum, Plaintiff presents a single on appeal before this Court, which does not persuade. Substantial evidence supports the ALJ's determinations in this case. *See Perales*, 402 U.S. 389. As such, the Commissioner's decision is conclusive and must be upheld. *Id.* at 390. Considering the foregoing, it is **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and Plaintiff's complaint be **DISMISSED**.

**IT IS ORDERED** that this case is **TRANSFERRED** back to the docket of the United States District Judge.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C.

§ 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

**SO ORDERED**.

Dated February 11, 2016.

_____
**E. SCOTT FROST**
**UNITED STATES MAGISTRATE JUDGE**